40826. WILSON v. NICHOLS.
(316 SE2d 752)

WELTNER, Justice.

Wilson contends that in 1973 his uncle promised to make a will by which he would devise to Wilson 83 acres of land in exchange for Wilson's agreement to work for the uncle at low wages for an extended period of time. The uncle died intestate in 1981, and the uncle's widow died in that same year, also intestate. Nichols was appointed administratrix of the widow's estate, and Wilson filed suit against her, seeking specific performance of the alleged contract. Summary judgment was granted in favor of the administratrix, and Wilson appeals.

This case presents three areas for consideration: whether certain conversations between Wilson and his uncle which Wilson contends constitute or illuminate the alleged contract are admissible, notwithstanding that they transpired when the provisions of the former Dead Man's Statute (former Code Ann. § 38-1603 (1)) were in effect; whether certain alleged conversations occurring after the effective date of the repeal of the former Code section (on July 1, 1979) are legally sufficient to authorize the grant of the relief sought; and

whether the pre-1979 conversations may be considered as evidentiary matter on motion for summary judgment.

1. Former Code Ann. § 38-1603 (1) rendered inadmissible evidence of oral transactions with persons since deceased. That provision was amended by present OCGA § 24-9-1 (b), providing as follows: "This Code section, as revised by an Act approved April 17, 1979 (Ga. Laws 1979, p. 1261) shall apply to transactions or occurrences which take place on or after July 1, 1979, and this Code section, as it existed prior to July 1, 1979, shall apply to transactions or occurrences which took place prior to July 1, 1979." Manifestly, none of the conversations between Wilson and his uncle which took place prior to July 1, 1979 are admissible by virtue of their express exclusion by the statute. Wilson's contention, that by "transaction" is meant the continued undertaking (after July 1, 1979) of Wilson and his uncle, is without merit.

2. As to conversations occurring after July 1, 1979, Wilson testified on deposition that his uncle took him to the tract of land and said that "he wasn't — never intended to sell it; he was going to leave it for [Wilson]." He said also that the uncle once pointed to a "line tree" adjacent the property and said, "It'll be worth something to you one of these days." That is his evidence.

" 'A contract upon which specific performance is sought must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it.' " *Charles v. Simmons*, 215 Ga. 794 (2) (113 SE2d 604) (1960). See also *Gregory v. Gregory*, 252 Ga. 154 (312 SE2d 313) (1984), addressing the sufficiency of evidence relative to inter vivos gifts. From the evidence here, we cannot know whether the land was intended to be transferred to Wilson by devise or by inter vivos gift. Given this ambiguity, the evidence is insufficient to create a genuine issue of fact as to the existence of an oral contract to make a will.

3. Wilson contends that, though the pre-1979 conversations might not be admissible on *trial* of the case, the trial court erred in granting summary judgment based upon a perceived inadmissibility, citing *Rigby v. Powell*, 233 Ga. 158 (210 SE2d 696) (1974).

That case held as follows: "The appellant's testimony as to transactions with his deceased wife would not be admissible, over objection, on the trial, under Code Ann. § 38-1603 (1). However, such testimony is admissible under certain circumstances, and is not without probative value. *Wood v. Isom*, 68 Ga. 417 (5); *Dowling v. Doyle*, 149 Ga. 727, 731 (102 SE 27); *Padgett v. Gaddis*, 156 Ga. 385 (2) (119 SE 525). See *Roberts v. Johnson*, 152 Ga. 746 (111 SE 194). On summary judgment the court is concerned only with whether there is a genuine issue of fact for determination and not with the difficulty the appellant may have in proving his case." 233 Ga. at 162.

We agree that if *Rigby v. Powell*, supra, be followed the trial

court must consider on summary judgment the evidentiary implications of the pre-1979 conversations, though ultimately they be inadmissible under OCGA § 24-9-1 (b). We will consider here, however, the wisdom of continued adherence to that rule.

The purpose of summary judgment practice " 'is to eliminate the necessity for a trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.' " *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 603 (203 SE2d 173) (1974), citing *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962). See OCGA § 9-11-56. " 'Summary judgment under Georgia law is a proceeding where one must present his case sufficiently to raise an issue of fact or risk judgment going against him.' " *Parker v. Knight*, 245 Ga. 782 (267 SE2d 222) (1980). "[T]he Act was clearly intended to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial, even though the petition fairly bristles with serious allegations, if . . . the pleader does nothing to contradict the affidavits of the movant which show there is no right of the opposite party to prevail." *Summer-Minter & Assoc. v. Giordano*, 231 Ga. at 603, citing *Crutcher v. Crawford Land Co.*, 220 Ga. 298, 303 (138 SE2d 580) (1964).

It is thus seen that the rule in *Rigby v. Powell*, supra, is at odds with the principles underlying summary judgment, in that a trial court is forced to conduct a jury trial, with all its cost in time and money, only to reach precisely the same evidentiary question as *first* became apparent on summary judgment. In such cases (and the one before us is such a case), to forestall disposition by summary judgment serves only to sustain in life, by artificial means, a case whose terminal state easily is diagnosed on summary judgment.

We therefore overrule *Rigby v. Powell*, supra.

Trial courts, under the general provisions pertaining to motions for summary judgment, must consider all factual matters presented, as well as suggested bases for their ultimate admissibility. Hence, a party resisting summary judgment, in addition to coming forward with evidence which is sufficient to create a genuine issue of material fact, must present some credible warrant for its admissibility.

As Wilson has failed to present any theory for the admissibility of the pre-1979 conversations, they are properly excludable on summary judgment. Under the considerations of the other Divisions of this opinion, therefore, the grant of summary judgment to Nichols was not error.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED JUNE 19, 1984.

*Cathey & Strain, Dennis T. Cathey, John Michael Brown,* for appellant.

*McClure, Ramsay & Dickerson, John A. Dickerson, John G. Davis,* for appellee.

SMITH, Justice, dissenting.

I would adhere to the rule announced in *Rigby v. Powell,* 233 Ga. 158 (210 SE2d 696) (1974), and hold that Wilson's evidence of pre-1979 conversations with his uncle was sufficient to create an issue of fact as to the existence of a contract between the two. It is possible, and indeed highly likely, that at trial Wilson could have produced other, admissible, evidence to support his theory of recovery. To close off this possible avenue of relief on a summary judgment ruling is, in my view, unduly harsh. I dissent.