70751, 70760. GREGORY v. J. T. GREGORY & SON, INC.;
and vice versa.
(338 SE2d 7)

BEASLEY, Judge.

J. T. Gregory & Son, Inc., was created in 1963, with J. T. Gregory, Sr. and J. T. Gregory, Jr. as the sole shareholders. Gregory Sr. as president and Gregory Jr. as vice president ran the corporation together from 1963 until 1966, when Gregory Sr. accepted other employment but remained as president and director throughout. From 1966 until 1982, Gregory Jr. managed the corporation alone. In 1964 all of the original papers of incorporation were destroyed in an office fire. In 1982 Gregory Sr. reappeared and asserted his ownership of 51 percent of the shares of the corporation. He filed suit against the corporation and Gregory Jr. to enforce his claim, and a jury returned a special verdict that Gregory Sr. had given his shares to Gregory Jr. in 1966. On appeal, however, the Supreme Court reversed that special verdict. *Gregory v. Gregory,* 252 Ga. 154 (312 SE2d 313) (1984). In its judgment on remittitur, the trial court adopted the Supreme Court's judgment as its own, and also found that because Gregory Sr. owned 51 percent of the shares of the corporation, no deadlock existed in the management and appointment of a receiver would be inappropriate.

A shareholders' and directors' meeting was thereafter scheduled and conducted by Gregory Sr. on March 14, 1984. Gregory Jr. was not in attendance. At that meeting, Gregory Sr. elected himself president and treasurer, Gregory Jr. as vice president, and Carol Daniel as secretary. At that time, the board (consisting of Gregory Sr. and Daniel) directed Gregory Sr., as president, to demand an accounting and settlement of Gregory Jr. with regard to all corporate property in his possession or money he owed to the corporation. On May 2 another shareholders' and directors' meeting was held, at which time Gregory Sr. was authorized to negotiate an employment contract with Gregory Jr. and to terminate the latter's employment if no satisfactory agreement was reached. Gregory Sr. fired Gregory Jr. on May 7, and the board of directors removed Gregory Jr. from his position as vice president.

Subsequently, the corporation commenced this action against Gregory Jr., seeking recovery for (1) a 1980 automobile owned by the corporation that Gregory Jr. had in his possession; (2) money he had borrowed from the corporation; (3) the price of a boat Gregory Jr. had purchased with corporate funds; (4) corporate funds that Gregory Jr.

had spent on miscellaneous personal expenses; and (5) attorney fees and exemplary damages for bad faith in converting the corporate funds. Gregory Jr. counterclaimed (1) for loss of earnings, on the basis that his termination and ouster from the corporate position had been unauthorized, and (2) for liquidation of the corporation, on the bases that there was a deadlock in the corporate management and that Gregory Sr. was wasting corporate assets. The corporation moved for partial summary judgment on its claims for the automobile, the borrowed money, the price of the boat, and on Gregory Jr.'s counterclaims. Gregory Jr. also moved for partial summary judgment over the unauthorized termination of his corporate position, the deadlock in corporate management, his statute of limitations defense with regard to the claim for the borrowed money, and the ownership of the boat. The trial court granted the corporation's motion except on Gregory Jr.'s counterclaim seeking liquidation of the corporation, and denied Gregory Jr.'s motion. Both parties appeal.

1. The corporation's action against Gregory Jr., as well as Gregory Jr.'s defense and counterclaims against the corporation, depended upon whether an issue of fact had been established over the existence of certain corporate bylaws which required the presence of two-thirds of the shareholders for a quorum necessary to transact business. The corporation concedes that if such bylaws did exist, a deadlock resulted, since Gregory Sr. owned 51 percent of the shares and Gregory Jr. owned 49 percent. Moreover, if these bylaws existed, it would also follow that the ouster of Gregory Jr. from his corporate position was invalid because it was accomplished by a board of directors elected during the shareholders' meeting of March 14, 1984, when a quorum was not present, *McCreery v. RSA Mgt.*, 249 Ga. 43 (287 SE2d 203) (1982), and that this action brought by the corporation was unauthorized.

Physical production of the actual bylaws was impossible because all of the original papers of incorporation, including any bylaws, had been destroyed by the fire in 1964. Gregory Jr., however, averred that a copy of corporate bylaws obtained in 1978 from the attorney who had incorporated the company had been treated as the corporation's bylaws and assumed to be the same bylaws originally adopted by the corporation in 1963. Gregory Sr. claimed that no bylaws had ever been adopted, although when he officially called for shareholders' meetings in 1982, he had directed the corporation's secretary to notify the shareholders and directors "as provided in the by-laws."

Both Gregory Jr. and the corporation attempted to support their positions about the existence of bylaws with the record in the earlier action brought by Gregory Sr. against Gregory Jr. and the corporation. In that case, the attorney for Gregory Sr. had tendered a purported copy of the bylaws into evidence as the corporation's bylaws,

and the attorney for Gregory Jr. and the corporation had objected to its admission on the basis that there had been no showing that the bylaws had, in fact, been adopted by the corporation. Finding that an issue of fact existed, the trial court admitted the document into evidence.

Gregory Jr. now contends that the tender of the document as the corporation's bylaws in the earlier action constituted a judicial admission and also a representation to a court, binding upon Gregory Sr. as an admission made by his agent while acting within the scope of his authority. Gregory Sr. contends that the trial court's judgment on remittitur, finding that no management deadlock existed because Gregory Sr. was a 51 percent shareholder, implicitly held that only a majority interest was necessary to conduct corporate business. We are unpersuaded by any of these contentions. No admission or representation binding upon the corporation in the instant case resulted from the tender of the alleged bylaws by Gregory Sr.'s attorney in the earlier action, simply because the corporation is not the same party as Gregory Sr. See OCGA §§ 24-3-30; 24-3-33, generally; *Blackburn v. Blackburn*, 168 Ga. App. 66 (308 SE2d 193) (1983).

Similarly, based on the record on appeal, this court is unable to find an estoppel by judgment. Assuming that the prerequisite identity of parties is met where co-defendants in an earlier action are opposite parties in a subsequent action, there still can be estoppel by judgment only as to such matters within the scope of the previous pleadings as necessarily had to be adjudicated in order for the previous judgment to be rendered, or as to such matters within the scope of those pleadings which are shown by aliunde proof to have been actually litigated and determined. *Harvey v. Wright*, 80 Ga. App. 232 (55 SE2d 835) (1949); see also *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343 (270 SE2d 883) (1980). The party asserting the estoppel has the burden of sufficiently demonstrating that a particular issue actually was litigated and decided in the previous action. See *Ranger Constr. Co. v. Robershaw Controls Co.*, 166 Ga. App. 679 (4) (305 SE2d 361) (1983).

A crucial question thus becomes that of the trial court's awareness of the contents of the alleged bylaws in the previous action. In the instant case, certified copies of portions of the trial transcript in the previous action were produced, but those excerpts show only that the trial court ruled that a factual issue had been established over the existence of the corporate bylaws; there was no discussion about the specific contents of the alleged bylaws regarding what constituted a quorum for conducting business. Absent a showing that such an issue was raised, the trial court's finding in its judgment on remittitur, that no management deadlock existed because Gregory Sr. owned 51 percent of the shares, did not contain or imply a corollary finding that a

quorum was constituted by a mere majority, rather than two-thirds of the shareholders.

Nevertheless, the evidence before the trial court on the motions for summary judgment shows conclusively that the bylaws cannot be established. There is no fact in dispute which can authorize a jury to find otherwise. Gregory Sr. swore in affidavit that no bylaws were ever adopted. Gregory Jr. stated in deposition that he could not remember whether bylaws were ever adopted, although he thought that was supposed to have occurred at the organizational meeting in December 1963.

"The existence of a genuine original is essential to the admissibility of a copy." OCGA § 24-5-25. See in this connection *Bigelow v. Young*, 30 Ga. 121, 124 (1) (1860), and *Durham v. Holeman*, 30 Ga. 619, 624 (1) (1860). Those cases involved, respectively, a contract and a deed. In the latter, the court said: "Before secondary evidence of the contents of a lost deed can be gone into, the existence and execution of such deed must be established by proof." Id. at 624. The bylaws face the same principle.

The secretary to the attorney who drew up the papers of incorporation in 1963, who acted as the corporation's accountant until 1978, was asked to and did attempt to reconstruct the corporate papers sometime between the fire in 1964 and 1978. It is undisputed that she obtained a file from the attorney's office and made up the set of bylaws which contain the 2/3 quorum for shareholders' meetings. But she cannot even remember whether she was copying from what the attorney had prepared for this corporation, or from some other corporation's file, or from a file of corporate forms and just assuming that the set prepared for this corporation was identical. Thus the source of the purported copy in dispute here is unascertainable. Therefore the contents of the original, even assuming bylaws were adopted, cannot be shown by the secondary evidence because it is fatally flawed. While it is true that contents of a record may be proved by secondary evidence, OCGA § 24-5-23, what is there here to link the purported copy to the true original? Pure speculation. The secretary/accountant stated that the 2/3 quorum provision was usually provided by the attorney's office for corporations in which there were 3 stockholders, whereas a simple majority quorum was usually provided for corporations such as this one in which there were 2 stockholders. She concluded that she may have been mistaken when she created the set of bylaws and may have chosen the wrong form in this regard. In addition, she does not know whether bylaws were ever adopted by the shareholders initially, and the evidence is undisputed that there is no record or recollection that the corporation ever adopted the set she created.

With this evidence, it is conclusive that the bylaws of this corpo-

ration either never existed because they were not adopted, or that if they did exist, that it cannot be established as a matter of fact what quorum they provided for shareholders' meetings. Sometimes, and this is one of them, the fact sought cannot be found, and that itself is a fact. Faced with this, a jury would be simply guessing if it found as fact that bylaws were adopted and that they provided for 2/3 or for majority as the quorum requirement.

In such a situation, the law steps in to provide a solution. OCGA § 14-2-116, relating to the absence of bylaws, must be applied to the actions taken here: "(a) Unless otherwise provided in the articles of incorporation or in bylaws adopted by the shareholders, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders; but in no event shall a quorum consist of less than one-third of the shares entitled to vote at the meeting."

In consequence, the actions taken by the majority at the duly-called meetings in 1984 were valid.

2. We agree with the trial court with respect to the loans of Gregory Jr. by the corporation and the automobile which he was required to surrender when his employment was terminated.

3. But as for the boat, questions of fact remain as to who the owner is. The facts are in dispute and ambiguous confusion. It appears that the ownership of the boat was never made clear throughout its association with the corporation and the father and son. The facts concerning its purchase will have to be sorted out and the law then applied to the now-disputed facts which involve not only what happened but also what the intentions of the respective parties were. The principles of summary judgment preclude our agreeing that the corporation is entitled to repayment from Gregory Jr. for what it asserts was his boat.

4. The action of Gregory Sr. in terminating Gregory Jr.'s employment, taken on behalf of the corporation as its president, was valid. The directors could meet and act with majority. This they did, authorizing termination. Thus the grant of summary judgment to the corporation on Gregory Jr.'s counterclaim Count 1 for money based on invalid termination was correct.

5. As to the denial of summary judgment to the corporation on Gregory Jr.'s counterclaim Count 2 seeking liquidation of the corporation due to "deadlock," the trial court erred. The only "deadlock" Gregory Jr. could possibly refer to was occasioned by his voluntary absence from the meeting, and that did not cause a deadlock because Gregory Sr. has 51% of the vote. Even considering a 2/3 quorum for shareholders' meetings, there is no "deadlock" as would allow liquidation pursuant to the statute counterclaimant relies on.

OCGA § 14-2-285 provides: "(a) The superior courts shall have

full power to liquidate the assets and business of a corporation: (1) In an action by a shareholder (Gregory Jr.) when it is established: (A) That the directors are deadlocked in the management of the corporate affairs and the shareholders are *unable* to break the deadlock, that irreparable injury to the corporation is being suffered or is threatened by reason thereof, *and* that it is impracticable for the court to appoint a provisional director as provided in Code Section 14-2-142 or to continue one in office; . . . . (C) That the shareholders are deadlocked in *voting power* and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; . . ." (Emphasis supplied.)

The basis for shareholder Gregory Jr.'s Count 1 is "deadlock." He recites the language appearing in subsection (C) regarding failure to elect successors, but that cannot constitute a ground here because it is undisputed that the shareholders are not "deadlocked in voting power"; he has 49% of the shares and Gregory Sr. has 51%.

If he means the deadlock "in management" ground provided in subsection (A), the facts preclude it. Shareholder Gregory Jr. is not "unable" to break the deadlock mentioned in subsection (A). Even if a 2/3 quorum had been required, all he has to do is attend a meeting; if none is called, all he has to do is request one. OCGA § 14-2-112 (c) requires special meetings to be called "upon the written request of the holders of not less than 25 percent of the outstanding shares of the corporation entitled to vote in an election of directors."

The minority opinion finds that he has also asserted, as a basis for liquidation, that he has a triable claim under subsection (D): "That the corporate assets are being misapplied or wasted; . . . ." But he has not stated such in his counterclaim and he has alleged no facts which, if proved, would support a cause of action on this ground. OCGA § 9-11-8 (a) (2); *Grant v. Fourth Nat. Bank*, 229 Ga. 855, 859 (1) (194 SE2d 913) (1972); *Poole v. City of Atlanta*, 117 Ga. App. 432 (2) (160 SE2d 874) (1968). He alleges inadequate management but not misapplication or waste of corporate assets. The law does not permit the court to liquidate a corporation for the acts he complains of. " 'No principle of law is more firmly fixed in our jurisprudence than the one which declares that the courts will not interfere in matters involving merely the judgment of the majority in exercising control over corporate affairs.' [Cits.]" *Regenstein v. J. Regenstein Co.*, 213 Ga. 157, 159 (97 SE2d 693) (1957). Thus, the corporation is entitled to summary judgment as to Count II of the counterclaim, and the trial court erred in denying it.

In sum: in Case No. 70751 we affirm the denial of partial summary judgment to defendant; we affirm the grant of partial summary judgment to plaintiff with respect to the loans and the car and on

Count 1 of the counterclaim; and we reverse the grant of partial summary judgment to plaintiff with respect to the boat; in Case No. 70760 we reverse the denial of summary judgment to plaintiff on Count 2 of the counterclaim.

*Judgment affirmed in part and reversed in part in Case No. 70751; judgment reversed in Case No. 70760. Banke, C. J., Carley, Sognier and Pope, JJ., concur. Deen, P. J., McMurray, P. J., Birdsong, P. J., and Benham, J., dissent.*

DEEN, Presiding Judge, dissenting.

" 'If a man does not keep pace with his companions, perhaps it is because he hears a different drummer. Let him step to the music which he hears, however measured or far away.' — Thoreau. I must dissent." *Gray v. Quality Fin. Co.*, 130 Ga. App. 762, 764 (204 SE2d 483) (1974).

The majority opinion acknowledges that "the corporation's action against Gregory Jr., as well as Gregory Jr.'s defense and counterclaims against the corporation, depended upon whether an issue of fact had been established over the existence of certain corporate bylaws which required the presence of two-thirds of the shareholders for a quorum necessary to transact business." I cannot agree, however, with the majority's conclusion that no such factual issue was established in this case.

Admittedly, Gregory Jr. was unable to swear to any specific memory of the adoption of such bylaws at the creation of the corporation in 1963. But it is clear that prior to the actual commencement of this litigation, both Gregory Sr. and Gregory Jr. conducted themselves with the understanding that the bylaws did exist. Gregory Jr. had the corporate documents, including bylaws, reconstructed in 1978, long before Gregory Sr. resurfaced and reclaimed his corporate position; thereafter, Gregory Jr. treated these reconstructed bylaws as *the* bylaws of the corporation. It is apparent that Gregory Sr. initially did likewise, because when he officially called for shareholders' meetings in 1982, he had instructed the corporation's secretary to follow the procedures "as provided in the by-laws." The drumbeat most audible to me compels a conclusion that the evidence, though scant, was sufficient to create an issue of fact over the existence and adoption of the bylaws.

In summary, because a jury question existed over the existence of bylaws which provided for a quorum consisting of two-thirds of the shareholders, the trial court properly denied the corporation's motion for summary judgment on Gregory Jr.'s counterclaim seeking liquidation of the corporation, but erred in granting that motion on the counterclaim for loss of earnings. Moreover, assuming that the existence and validity of the bylaws were established as fact, there was no

quorum to transact business at the shareholders' meeting of March 14, 1984, when the course of action against Gregory Jr. was approved. In the event that the factual issue regarding the bylaws should be resolved in favor of Gregory Jr., it would follow that the corporation was unauthorized to commence this action against Gregory Jr.; thus summary judgment for the corporation was inappropriate and premature until this crucial factual issue is determined.

I am authorized to state that Presiding Judge McMurray, Presiding Judge Birdsong, and Judge Benham join in this dissent.

DECIDED OCTOBER 21, 1985 —
REHEARING DENIED NOVEMBER 8, 1985 —

*James A. Parker, Wade M. Crumbley, Rodney G. Meadows*, for appellant.
*Joab O. Mangum III*, for appellee.