Theodore J. MAYER, Plaintiff,

v.

EXECUTIVE TELECARD,
LTD., Defendant.

C.A. No. 14459.

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 23, 1997.
Decided: April 25, 1997.

Bruce L. Silverstein, James P. Hughes, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington; Herbert Teitelbaum, Daniel P. Waxman, of Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for Plaintiff.

Edward M. McNally, P. Clarkson Collins, Jr. and Joseph C. Schoell, of Morris, James, Hitchens & Williams, Wilmington, for Defendant.

## OPINION

JACOBS, Vice Chancellor.

Pending is the plaintiff's motion for summary judgment. The plaintiff, Theodore J. Mayer ("Mayer"), was found entitled to indemnification for the fees and expenses he incurred in his successful defense of a lawsuit brought against him in Chicago, Illinois. The issue is whether Mayer may now recover against the corporation, Executive Telecard, Ltd. ("Executive Telecard"), the attorneys fees he incurred in prosecuting this Delaware indemnification action to a successful conclusion. For the following reasons I conclude that he is not and that his motion for summary judgment must be denied.

## I. FACTS

In this action Mayer sought indemnification of the fees and expenses he incurred in successfully defending a federal securities action brought against him in the Northern District of Illinois, *Czechorski v. Mayer, et al.*, Case No. 95C–3060 (the "Czechorski Action"). Mayer predicated his entitlement to indemnification upon 8 *Del.C.* § 145(c), and also upon Article IX, Section 9.1 of Executive

Telecard's bylaws. Mayer also claimed entitlement to recover the fees and expenses he incurred in establishing his entitlement to indemnification in this proceeding.

In late December, 1995, Mayer moved for summary judgment on the merits of his claim for indemnification for his expenses in defending the *Czechorski* action. On April 19, 1996, this Court determined in a bench ruling that Mayer was entitled to summary judgment on that claim, but it denied the motion for summary judgment on Mayer's claim for "fees for fees," *i.e.*, for his expenses in successfully prosecuting his entitlement to indemnification in this action. The Court did, however, grant Mayer leave to renew his motion and pursue the "fees for fees" claim based upon supplemental briefing.

Thereafter, Mayer filed a supplemental brief, together with an affidavit in support of his renewed motion for summary judgment on his claim for fees incurred in prosecuting this indemnification action. Again, the defendants opposed Mayer's claim, which was based upon § 145.

At the oral argument held on January 6, 1997, the Court instructed the parties to further elaborate their positions with respect to Mayer's alternative claim of entitlement to indemnification under Executive Telecard's bylaws. The parties filed supplemental memoranda addressing that point.

This is the Opinion of the Court with respect to Mayer's claim of entitlement to "fees for fees" indemnification.

## II. *MAYER'S STATUTORY CLAIM*

Both sides rely upon 8 *Del.C.* § 145(c) as supporting their respective positions regarding whether Executive Telecard is—or is not—required to indemnify Mayer for the fees he incurred in this action. Section 145(c) provides:

> To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise *in defense of* any action, suit or proceeding referred to in subsections (a) and (b) of this section, or *in defense of* any claim, issue or matter therein, he shall be indemnified against expenses (including attor-

neys' fees) actually and reasonably incurred by him *in connection therewith.*

8 *Del.C.* § 145(c) (emphasis added).

■ In interpreting a statute the cardinal objective is to ascertain and give effect to the intent of the General Assembly. *Coastal Barge Corp. v. Coastal Zone Industrial Control Board,* Del.Supr., 492 A.2d 1242, 1246 (1985). If the statute is unambiguous because there is no reasonable doubt as to the meaning of the words used, the Court's role is limited to an application of the literal meaning of the words. *Hudson Farms, Inc. v. McGrellis,* Del.Supr., 620 A.2d 215, 217 (1993). In performing this analysis, the words used in the statute will be given their common, ordinary meaning. *Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226, 230 (1982).

■ Having performed that analysis, the Court concludes that the statute is not ambiguous. Section 145(c) requires indemnification of expenses incurred "*in connection [ ]with*" the "defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein" as to which the indemnification claimant is "successful on the merits or otherwise." (Emphasis added). In this context, the term "in connection therewith" refers to the expenses incurred in the original underlying action in which the claimant prevailed on the merits. In this case, that means the *Czechorski* action, not this Delaware indemnification proceeding. To read "in connection therewith" more broadly to encompass not only the indemnification action but also the underlying lawsuit, would stretch those words beyond their common and ordinary meaning.

Mayer contends that because the General Assembly could have used more limiting language but did not, a more expansive interpretation of § 145(c) is justified. Mayer argues that the Legislature could (for example) have limited the category of indemnifiable expenses to "expenses incurred in the defense of any action, suit or proceeding." Because the General Assembly did not do that, he argues that this Court should infer that the Legislature intended for the term "in

connection therewith" to have broad coverage. But that argument cuts both ways. The Legislature could also have included language explicitly granting a successful claimant "fees for fees," as other states have done in their statutes.[1] The Delaware General Assembly chose not to include such language. For these reasons I conclude that the defendants' argument—that the absence of explicit language evidences an intent *not* to provide for such fees—to be the more compelling one.

That reading of § 145(c) is also consistent with the result reached by all courts that have considered this issue to date. The Ninth Circuit Court of Appeals has stated:

> Attorneys' fees may not ordinarily be recovered in the absence of express statutory authority or contractual provision for such an award. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, [1406–07], 18 L.Ed.2d 475 (1967). The Delaware statute unlike the California [indemnification] statute, does not provide for the recovery of attorneys' fees and expenses incurred in establishing an indemnity claim. *Compare* [8 *Del.C.* § 145] with Cal. Corp.Code § 317(a), (d). It requires a corporation to indemnify its directors, officers, employees and agents against expenses incurred in connection with the successful defense of certain actions against them, but does not expressly indemnify them against expenses incurred in establishing the right to indemnification. *See* [8 *Del.C.* § 145(c) ].

*Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527–28 (1985); *see also MCI Telecommunications Corp. v. Wanzer*, Del.Super., C.A. No. 89C–MR–216, Poppiti, J., 1990 WL 91100 (June 16, 1990); *Jackson v. Turnbull*, Del. Ch., C.A. No. 13042, Jacobs, V.C. (May 22, 1995 (oral ruling)).

Mayer also argues that given its legislative purpose, the statute cannot reasonably be so read. The statute's purpose:

> is to 'promote the desirable end that corporate officials will resist what they consider' unjustified suits and claims, 'secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated.' Beyond that, its larger purpose is 'to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.'[2]

Mayer argues that requiring a director to pay the costs of vindicating his indemnification right would undercut that policy, by encouraging corporations routinely to oppose indemnification claims, and thereby coerce indemnification claimants to settle for less than their full entitlement. That argument is not without force. It suggests that the sounder public policy may be for such fees to be made recoverable as a matter of right. The difficulty is that it is not the province of this Court to create an entitlement that the General Assembly has elected not to provide. *Scattered Corp. v. Chicago Stock Exchange. Inc.*, Del. Ch., 671 A.2d 874, 879 (1994), *aff'd,* Del.Supr., 676 A.2d 907 (1996) (Order) ("the Court lacks the power to legislate and it is not free to rewrite clear statutory provisions under the guise of 'interpretation' ").

Mayer points to various federal decisions wherein the prevailing parties were awarded the fees they incurred in obtaining fees recoverable under federal fee-shifting statutes, and argues that those decisions support his reading of § 145. I cannot agree. The federal statutes in those cases shifted attorneys fees to the losing party, in order to encourage the bringing of litigation to enforce the substantive public policy underlying the statute.[3] To further encourage the bringing of

1. *See, e.g.,* Ga.Code Ann. § 14–2–854(b) (1996), Ind.Code Ann. § 23–1–37–11 (Burns 1996); *see also* Model Business Corp. Act § 8.54(b) (1993).

2. *Hibbert v. Hollywood Park, Inc.*, Del.Supr., 457 A.2d 339, 343–44 (1983), (quoting Ernest L. Folk, III, *The Delaware General Corporation Law* 98 (1972) [in turn quoting *Mooney v. Willys–Overland Motors, Inc.*, 204 F.2d 888, 898 (3d Cir.

1953) and *Essential Enterprises Corp. v. Automatic Steel Products, Inc.*, 39 Del.Ch. 371, 164 A.2d 437, 441–42 (1960) ]).

3. That fee-shifting affect is sometimes described as the "private attorney general" approach. *See Bagby v. Beal*, 606 F.2d 411, 416 (3d Cir.1979)(quoting *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir.1978)) ("the purpose

such litigation, federal courts have interpreted broadly the fee-shifting statutes, to include the fees that the prevailing party was required to expend to vindicate his statutory entitlement to the fees incurred in the original, underlying action.[4]

The policy underlying Delaware's indemnification statute is different. Its purpose is not to promote litigation to vindicate an ulterior public policy, nor does our statute shift to the losing party in the underlying action the successful director's (or officer's) attorneys' fees. Section 145 places the burden of indemnification upon the corporation. 8 Del.C. § 145(a) & (b) permits the corporation to agree to pay fees in specified circumstances even when the director or officer is not successful in the underlying action. Section 145(c), which does require that the indemnification claimant be successful, imposes the indemnification obligation upon the corporation whether or not the corporation is a losing party (or even a party at all) in the underlying action. 8 Del.C. § 145(c).

Thus, the purpose of § 145 is not to encourage litigation or to deter the losing party in the underlying action from prescribed categories of conduct. Rather, its purpose is to encourage capable persons to serve as officers, directors, employees or agents of Delaware corporations, by assuring that their reasonable legal expenses will be paid. To that end, the Delaware General Assembly apparently has concluded that allowing mandatory indemnification for fees incurred in the underlying action is an adequate incen-

tive, without also requiring indemnification of the fees incurred by the claimant in the indemnification action itself. Reasonable persons may disagree with that judgment, i.e., whether "fees for fees" is also needed as a further incentive for capable persons to serve as directors or officers of Delaware corporations. In the end, however, that judgment is legislative, not judicial.

Accordingly, Mayer is not entitled to judgment on his claim insofar as it is based on the indemnification statute.

### III. *THE BYLAWS CLAIM*

■ In the alternative, the plaintiff claims entitlement to "fees for fees" indemnification under Article IX, Section 9.1 of the corporation's bylaws, which states:

Section 9.1. Indemnification, The Corporation shall ... (b) indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in right of the Corporation) by reason of the fact that he is or was a director, officer employee or agent of the Corporation ... against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with any such action, suit or proceeding; *in each case to the fullest extent permissible under subsections (a) through (e) of Section 145 of the General Corporation Law of Delaware*

behind most statutory fee authorization [is] the encouragement of attorneys to represent indigent clients and to act as private attorney general in vindicating congressional policies").

4. *See Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163–65, 110 S.Ct. 2316, 2321–23, 110 L.Ed.2d 134 (1990) (finding "fees for fees" should be included under the Equal Access to Justice Act because "[t]he Government's general interest in protecting the federal fisc is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights and curbing excessive regulation and the unreasonable exercise of Government authority"). The inclusion of those fees has also been justified as additional deterrence to the losing party for violating the plaintiff's rights. *See Weisenberger v. Huecker*, 593 F.2d 49, 53–54 (6th Cir.1979), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110

(1979) (finding fees for fees included under the Civil Rights Attorney's Fees Awards Act of 1976 because "[w]hen Congress passed the Act its basic purpose was to encourage the private prosecution of civil rights suits through the transfer of the costs of litigation to those who infringe upon basic civil rights"); *Pitchford Scientific Instruments Corp. v. Pepi, Inc.*, 440 F.Supp. 1175 (W.D.Pa.1977), *aff'd*, 582 F.2d 1275 (3d Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979) (finding fees for fees included in § 4 of the Clayton Act because "the award of cost of suit and attorney fee in an antitrust case is designed to afford the plaintiff the relief to which he is entitled without any diminution by reason of the financial burden of making the judicial machinery work in his behalf").

or the indemnification provisions of any successor statute.

(emphasis added). Mayer argues that because § 145(c) does not prohibit awarding fees for fees, indemnification of those fees is "permissible under Section 145 ..." and therefore included in the above quoted bylaw provision. The flaw in that argument is that § 145(c) prescribes only what expenses the corporation is *required* to indemnify, not what expenses it is *permitted* to indemnify. To determine whether the indemnification of "fees for fees" is permitted by the statute (which is the critical inquiry under the bylaw), the Court must look to § 145(a).

Section 145(a) defines under what circumstances a Delaware corporation is permitted to indemnify the expenses incurred by a director or officer, employee or agent in a suit to which that person is made a party by reason of that status.[5] If indemnification of "fees for fees" is found to be permitted under § 145(a), then Executive Telecard's bylaws would mandate that such indemnification be provided. The issue, therefore, is whether "fees for fees" is permitted under § 145(a). For the reasons next discussed, I conclude that § 145 does not address that issue.

In contrast to § 145(c), § 145(a) is not limited to expenses incurred "in connection with the defense of any action." Rather, it encompasses the expenses incurred as a result of having been made a *party* to *any* action by reason of the claimant's status as an officer, director, employee or agent. That language has been interpreted as being broader in scope than § 145(c), to encompass (for example) a case where the directors are the plaintiffs in the underlying action. *See*

*Hibbert v. Hollywood Park, Inc.*, Del.Supr., 457 A.2d 339, 343–44 (1983).

Does § 145(a)'s greater breadth include in addition to the expenses incurred in the underlying action, the expenses incurred in the indemnification action? Mayer says that it does, but he points to no case which so holds. Even *Hibbert*, which interpreted § 145(a) broadly to include actions where the claimant director was a plaintiff, found only that the indemnifiable fees were those incurred in the underlying action. *Id.*, at 344. Concededly, the language of § 145(a) permitting indemnification to a party in any action could be read literally to encompass the indemnification action. Nonetheless, I am persuaded that § 145(a) addresses only the indemnification of fees incurred in the underlying action, not "fees for fees."

Section 145(a) permits indemnification of the indemnification claimant's expenses where the claimant "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation." 8 *Del.C.* § 145(a). Were the Court to find that § 145(a) permits indemnification of "fees for fees," it would be required to apply the "good faith/reasonable belief" standard to the conduct underlying the bringing of the indemnification claim. Otherwise, that standard would be without any legal effect. *See Coastal Barge Corp. v. Coastal Zone Indus.*, Del.Supr., 492 A.2d 1242, 1245 (1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part ·or section to produce a harmonious whole").[6] But to do that would be a pointless exercise that would make the "good faith/reasonable belief" requirement mean-

---

5. Section 145(a) pertinently provides:
   A corporation shall have power to indemnify any person who was or is a party ... to any threatened, pending or completed action, suit or proceeding ... by reason of the fact that he is or was a director, officer, employee or agent of the corporation ... against expenses (including attorneys' fees), judgments fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the corporation ...

8 *Del.C.* § 145(a).

6. Mayer argues that the Court need not apply the good faith/reasonable belief standard because a corporation may, and here has, contracted through a bylaw to provide this indemnification without reference to the director's good faith. *See* 8 *Del.C.* § 145(f). This Court agrees with the Second Circuit's construction of § 145 that a Delaware corporation lacks the power to indemnify a party who did not act in good faith. · *Waltuch v. Conticommodity Services, Inc.*, 88 F.3d 87, 92–95 (2d Cir.1996).

ingless surplusage. That is because it is difficult to imagine how a director could ever be said to have acted in bad faith in enforcing his contractual right to indemnification, or to construct a case where the director's successful prosecution of an indemnification action would be found to disserve the best interests of the corporation.

The only sensible construction of § 145(a) is one that would avoid imposing a requirement that would be meaningless because it would invariably be satisfied. Therefore, the appropriate construction is to interpret § 145(a) as referring to the fees incurred in the underlying action, and to its requirement that the fee claimant must have acted in good faith and in the reasonable belief that it was in the corporation's best interests, as applicable to the claimant's conduct that is the basis for the underlying action. To adopt Mayer's proposed reading of 145(a) as including "fees for fees" would require an analytical process so awkward, that it leads to the conclusion that the General Assembly cannot have had the subject of "fees for fees" in mind when it enacted § 145(a).[7]

## IV. CONCLUSION

For the above reasons, the plaintiff's motion for summary judgment is denied. IT IS SO ORDERED.

---

**7.** Arguably, § 145(f), which provides that the statutory indemnification provisions shall not be deemed exclusive of any other indemnification rights established by bylaw or other agreement, would permit a bylaw that explicitly allows indemnification of "fees for fees." The Court need not reach that issue, however, because Executive Telecard's bylaw provides for mandatory indemnification *"to the fullest extent permissible under subsections (a) through (e) of Section 145 of the General Corporation Law of Delaware* or the indemnification provisions of any successor statute." (Emphasis added). Therefore, the bylaw as written limits indemnification to that which is explicitly permitted in those sections, which this Court has found do not include "fees for fees."